IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 16-2272-JCO |
| CHARLES K. BRELAND, JR, | Chapter 11 |
| *Debtor*. | |

MEMORANDUM OPINION AND ORDER

This matter came before the Court for a hearing on June 5, 2018, on the Motion to Compel Chapter 11 Trustee to Amend Debtor's Statements and Schedules and to Investigate Claims, or in the alternative to Proceed Derivatively filed by creditors Adams and Reese, LLP and Crimson Portfolio, LLC (hereinafter "the Creditors"), to which the Bankruptcy Administrator (hereinafter, "BA") and the Chapter 11 Trustee, A. Richard Maples, responded in opposition, and to which the Creditors filed a Reply. (Docs. 976, 1045, 1048, 1056, respectively).

JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has authority to enter a final order.

FACTS AND PROCEEDINGS

The Debtor filed his voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2016. (Doc. 1). The Creditors have filed their unsecured proofs of claim in Debtor's case. (Claim Nos. 5, 6, 7, 8, 14). In May of 2017, the Court appointed Mr. A. Richard Maples, Jr. (the "Trustee"), as Chapter 11 Trustee of the Debtor's bankruptcy estate (the "Bankruptcy Estate"), removing the Debtor from his status as

Debtor In Possession. After the Trustee's appointment, he conducted meetings with the Debtor, Debtor's counsel, and Debtor's staff, which, at that time, consisted of an internal accountant, Ms. Lori Globetti, and a consultant,[1] Mr. William Miller. The Trustee also conducted a meeting with the BA and counsel for Crimson Portfolio, (hereinafter "Crimson"), of whom Mr. Miller is a principal. At the conclusion of the meeting and at the suggestion of the Trustee and BA, Crimson's counsel issued correspondence to the Trustee dated October 4, 2017, with a spreadsheet of assets and/or claims[2] which were not included in the Debtor's original schedules, statement of financial affairs or any amendments or modifications thereto. Since the issuance of the Crimson Letter, Crimson had not received any response from the Trustee, nor had the Trustee given any indication that he had investigated the undisclosed assets or claims. The Trustee's refusal to communicate is the reason the Creditors filed the present Motion.

On May 15, 2018, a hearing was first held on the Creditors' Motion, wherein counsel for Crimson informed the Court that the Trustee refused to communicate with her regarding the undisclosed assets, and regarding her attempts to reach a resolution with him of the filing of the instant Motion. The Trustee acknowledged to the Court that he indeed refused to communicate with counsel for Crimson on the grounds that the information provided was suspect and without merit because it was communicated primarily by William Miller. The Trustee also stated that his failure to communicate was due to his own failure to discern that the Motion actually requested information from him.

---

[1] The Court's designation of Mr. Miller as a consultant is not a finding as to Mr. Miller employment status, or lack thereof, in regard to the Breland entities and/or affiliated entities. The designation used herein is strictly for convenience purposes and the Court reserves its ruling on Mr. Miller's employment status for a later date.
[2] The undisclosed or partially disclosed assets/claims total approximately $29 million in potential value to the estate.

Dissatisfied with this excuse, the Court ordered the Trustee to read § 1106 letter for letter, confer with counsel for the Creditors, and be ready to address the status of the alleged undisclosed information at the next hearing date of June 5, 2018.

Leading up to the June 5th hearing, both the BA and the Trustee filed responses to the Creditors' Motion. The BA's response (Doc. 1045) is extremely defensive of the Trustee's actions and accuses the Creditors of attempting to supplant the Trustee with their own opinions of the value of the Debtor's assets. The BA further asserts that the Trustee is under *no* duty at all to amend the Debtor's voluntary petition, list, schedule or statement because § 521 and Rule 1009 of the Federal Rules of Bankruptcy Procedure requires the *debtor* to accurately and fully disclose this information, and, permits the *debtor* to amend these documents as a matter of course at any time before the case is closed. The BA also submits that the Trustee has performed all of the statutory duties required of him up to this point in this case, and that any additional status report provided by the Trustee at this time would be a mere rehash of the reasons why a chapter 11 trustee was appointed to begin with.

The Trustee's Response is similar to the BA's, he contends his statutory § 1106 duties were complied with when he filed the initial narrative Status Report dated October 13, 2017, plus monthly financial reports, itemized fee applications as Trustee every four months, and as attorney for the Trustee every three months. He also states that he has now assumed the responsibility for and has filed Fed. R. Bankr. P. 2015.3 Reports for the Debtor's affiliates, all of which were previously prepared under the supervision of William Miller, and were "notoriously inaccurate and otherwise deficient." (Doc. 1048 at 2). Since being ordered by this Court to communicate with the Creditors about this correspondence, the Trustee states he has

had "additional meetings" and obtained "additional information from the Debtor regarding possible amended schedules."

On June 15, 2018, the Trustee amended Schedules E/F to reflect that the claim of Adams & Reese, LLP, in the amount of $655,914.00 is disputed. (Docs. 1084, 1085). The assets presented in the Crimson Letter are not addressed in this amendment. (Compare Docs. 1084, 1085 with Docs. 976, 976-1).

## CONCLUSIONS OF LAW

The issue presented by the Creditors' Motion to Compel is whether the duty to amend the Debtor's schedules falls within the chapter 11 Trustee's § 1106 duties. This being an apparent matter of first impression, the Court, after thorough review and analysis, finds that it does.

### § 1106 Duties of the Trustee

A chapter 11 trustee's duties are set forth in 11 U.S.C. § 1106, which provides in pertinent part:

> **(a)** A trustee shall--
> **(1)** perform the duties of the trustee, as specified in paragraphs (2), (5), (7), (8), (9), (10), (11), and (12) of section 704(a);
> **(2)** if the debtor has not done so, file the list, schedule, and statement required under section 521(a)(1) of this title;
> **(3)** except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
> **(4)** as soon as practicable--
> **(A)** file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

> **(B)** transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates[.]

Section 704, as referenced in section 1106, states in pertinent part:

> (a) The trustee shall-
> . . .
> (2) be accountable for all property received;
> . . .
> (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest[.]

Section 1107 of the Bankruptcy Code gives a debtor in possession the rights and powers of a chapter 11 trustee and imposes on the debtor in possession most of the obligations of a trustee. 11 U.S.C. § 1107. Those obligations make a debtor in possession a fiduciary for the estate and its creditors. *Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 506 (D.S.C. 2000). Black's Law Dictionary defines "fiduciary" as "someone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure; . . . someone who must exercise a high standard of care in managing another's money or property." FIDUCIARY, Black's Law Dictionary (10th ed. 2014). As this Court previously stated in the law of this case, "[t]o accomplish his fiduciary responsibility, [the debtor in possession] must act in a transparent, forthright, and candid manner and work to benefit the bankruptcy estate." *In re Breland,* 570 B.R. 643, 656 (Bankr. S.D. Ala. 2017).

Where a chapter 11 trustee has been appointed, either for cause or in the interests of creditors, the duties and obligations set forth in § 1107 are transferred to the trustee, in addition to the statutory duties set out in § 1106. A chapter 11 trustee thence "stands in the shoes of the debtor and thereafter performs the fiduciary debtor-in-possession duties. . . ." *U.S. v. One 2009*

*Maserati Granturismo,* 2016 WL 4502457, at *1 (C.D. Cali. June 6, 2016). Furthermore, the trustee has a duty to treat all parties in the case fairly, and is required to exercise due care, diligence, and skill as to both affirmative and negative conduct. 7 Collier on Bankruptcy P 1106.02 (16th 2018).

After a trustee is appointed, the Bankruptcy Code mandates that the debtor "surrender to the trustee all property of the estate and any recorded information, including books, documents, records and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title." *See* § 521(a)(4). The Code also mandates that the debtor cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under the Code. § 521(a)(3).

"[A]ppointment of a trustee is a power which is critical for the [C]ourt to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Climate Control Mech. Servs., Inc.*, 2018 WL 1214475, at *6 (Bankr. M.D. Fla. Mar. 7, 2018) (*citing In re Breland,* 570 B.R. at 657); *see also* 7 Collier on Bankruptcy P 1106.01 (16th 2018) ("The duties described in section 1106(a) support the notion of a trustee as an independent third party whose role is to represent the estate for the benefit of the various parties in interest. The trustee's investigation and reporting duties provide a mechanism for full disclosure of the state of affairs so as to enable parties in interest to protect their rights and obtain the successful reorganization or liquidation of the debtor.").

As the court in *In re Taub* aptly stated,

> A trustee can fulfill the Debtor's fiduciary obligations to the estate and its creditors without any prospect of favoritism or animus. *Smart World,* 423 F.3d at 175 (concluding that debtor-in-possession's "duty to wisely manage the estate's legal claims is implicit in the debtor's role as the estate's only fiduciary"). That is, a trustee will not be affected by conflicts of interest and the long litigation history among many of the parties, and

> can manage the assets, . . . evaluate the claims, and otherwise perform the
> duties of a debtor-in-possession with the objective of preserving the value
> of the estate.

427 B.R. 208, 229–30 (Bankr. E.D.N.Y. 2010), *aff'd,* 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011).

### The Trustee's Duties

In the present case, information regarding omitted and/or undervalued assets and claims was provided to the Trustee in the Crimson Letter over six (6) months ago. After submitting the information, the Creditors received no response from the Trustee, and the Trustee admitted he refused to investigate the information because it was provided to him by Mr. Miller. The Trustee also refused to amend the Debtor's schedules to reflect any of the information provided. Likewise, because no investigation was conducted, no report reflecting such has been filed with the Court.

In their respective responses, the BA and the Trustee dispute the breadth of the Trustee's statutory duties, and claim that an investigation is not required because the information provided by Mr. Miller is "suspect." The BA further asserts a very literal reading of the Code and contends that § 521 specifically assigns the duty of filing or amending the schedules to the debtor only, thereby rendering the duty of amending outside the purview of the trustee's duties. The BA supports his position with the case, *In re Reeves,* 509 B.R. 35 (Bankr. S.D. Tex. 2014). This case is a nonbinding case which this Court finds unpersuasive and distinguishable on the following grounds.

The BA relies on *In re Reeves,* 509 B.R. 35 (Bankr. S.D. Tex. 2014) for the contention that the debtor has an affirmative duty to fully and accurately disclose all assets and interests in property throughout the case and requires the debtor to amend the schedules whenever it

becomes necessary to ensure the accuracy and reliability of the information disclosed therein. *Id.* at 63. While the Court agrees generally with this broad statement of the law, this Court finds such generalities are inapplicable to an individual chapter 11 wherein a trustee has been appointed. The *Reeves* case involved the bad faith conversion of a chapter 13 case to a chapter 7. The relevant portion of *Reeves* addressing the debtor's duty to amend hinges on an application of Fed. R Bankr. P. 1019(5)(C)(i) regarding conversion of a case to chapter 7 after confirmation of a plan. The present case is not a chapter 13 case; it has not been converted from another chapter to a chapter 11, nor has a plan been confirmed causing Rule 1015(5)(C)(i) to apply. The *Reeves* case therefore does not support the BA's position in this context.

For the following reasons, this Court finds that upon appointment, the Trustee has a continuing affirmative duty to amend the schedules as necessary. Case law interpreting a chapter 11 trustee's duties in the case of an individual debtor is sparse with no case directly on point in regard to this particular question. Accordingly, this appears to be a matter of first impression. In rendering this decision, the Court utilizes the rules of statutory interpretation in applying the Code, and it considers the overall intent and spirit of the 2005 amendments.[3]

First, a basic reading of § 1107, indicates that a debtor in possession has *fewer* duties than a chapter 11 trustee. *See* § 1107(a)("a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, *except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter*.") (emphasis added). Section 1107 expressly carves out the duties listed in § 1106(a)(2), (3), and (4) and assigns them to the trustee to be

---

[3] In 2005, the Bankruptcy Code received a major overhaul when the Bankruptcy Abuse Prevention and Consumer Protection Act was promulgated.

8

performed. Subsection (2) of § 1106 requires the trustee file the list, schedule, and statement under § 521(a)(1) of the Code, if the debtor has not done so. Subsection (3) requires an affirmative investigation by the trustee into the acts, conduct, assets, liabilities, financial condition of the debtor, operation of and desirability to continue the operation of the debtor's business, and any other matter relevant to the case or formulation of a plan. Subsection (4) requires a statement of the investigation, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate.

The BA contends that § 521 specifically assigns the duty of amending the schedules to the Debtor, thereby rendering the duty of doing so outside the purview of the Trustee's duties. This Court disagrees.

When a petition for relief is filed, the debtor has a statutory duty to file, *inter alia,* a list of creditors, a schedule of assets and liabilities, a schedule of current income and expenditures and a statement of his financial affairs. *See* § 521(a). Thereafter, the debtor has a general *right* to amend the petition, list, schedules or statement as a matter of course at any time before the case is closed. Fed. R. Bankr. P. 1009(a). If a chapter 11 trustee is appointed, and the debtor has not already filed the list, schedules, and statement, the duty to file those documents unquestionably shifts to the trustee pursuant to § 1106(a)(2). To accomplish this duty, the trustee is entitled to rely on the debtor's statutory obligation pursuant to § 521(a)(3) to "cooperate with the trustee as necessary to enable the trustee to perform [his] duties. . . ." *Id.* While the trustee's *duty* to amend the schedules is not specifically addressed in the Code, it is only logical that where the duty to file schedules shifts to the trustee upon appointment, so would the duty to amend the schedules where the trustee's investigation reveals amendment is necessary.

Likewise, where, under the Federal Rules of Bankruptcy Procedure, the *right* to amend is assigned to the debtor, this Court is convinced that same right is shared by the trustee when the trustee steps into the shoes of the debtor in possession. *See U.S. v. One 2009 Maserati Granturismo, supra* p. 5-6 (chapter 11 trustee thence "stands in the shoes of the debtor and thereafter performs the fiduciary debtor-in-possession duties. . . ."). More importantly, this Court refuses to conclude that such a right, initially assigned to a debtor by the *Rules* of Bankruptcy Procedure, unilaterally operates exclusive of the *Bankruptcy Code* to extinguish the fiduciary duty of the trustee to provide clear, accurate, and concise information to creditors through amendment of the schedules when necessary. Moreover, if a debtor is statutorily required to surrender his books and to cooperate with the trustee, and the trustee is required to file schedules where a debtor has not done so; then, by logical inference, the trustee should be required to amend those schedules when his investigation determines the information therein is incorrect. It is paramount that creditors have correct information when deciding how to proceed in a case. To allow the trustee to avoid his duty to provide accurate information is unacceptable to this Court and outside the intent of Congress. *See* H.R. REP. 109-31(I), 2, 2005 U.S.C.C.A.N. 88, 89 ("The purpose of [BAPCPA] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors.").

Therefore, considering the spirit of integrity, transparency and accuracy required by the Code and the fiduciary status of a chapter 11 trustee, the Court finds that an adoption of the BA's and Trustee's position would work an absurd result unintended by Congress. Thus, this Court finds that where a chapter 11 trustee has been appointed in an individual case, the duty to file *and amend* the list, schedules and statement affirmatively shifts to the chapter 11 trustee.

## The Trustee's Duty to Investigate and Report

The Trustee states that the reason he refused to investigate the information provided in the Crimson Letter was because the information was primarily provided by William Miller, and therefore suspect.

This Court ordered the appointment of a chapter 11 trustee for cause and because the interests of the creditors were best served by having an unbiased third party manage the estate. Under the Bankruptcy Code, creditors have the right to full disclosure of the debtor's affairs and to accurate information so that they may adequately pursue their claims. A petition for relief results in benefits which are twofold: the debtor is entitled to a stay of the collection of his debts, and creditors become entitled to full and accurate disclosure of the debtor's estate. Section 1106(a)(3) mandates that the trustee investigate the conduct of the debtor, as well as his financial condition; section 1106(a)(4) requires the trustee to file a statement of his investigation detailing any fact ascertained pertaining to fraud, dishonesty, or irregularity in the management of debtor's affairs, or to a cause of action available to the estate.

Reading these two subsections conjunctively, the trustee's role to investigate and provide unbiased disclosure is clear. *See* 7 Collier on Bankruptcy P 1106.01 (16th 2018) (*supra* p. 6). "A trustee can fulfill the debtor's fiduciary obligations to the estate and its creditors without any prospect of favoritism or animus." *In re Taub*, 427 B.R. 208, 229–30 (Bankr. E.D.N.Y. 2010), *aff'd,* 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) (citation omitted). This Court agrees with *Taub*, but believes a higher standard is necessary—that a trustee steps into the shoes of the debtor in possession and therefore not only *can* but *must* fulfill the debtor's fiduciary obligations to the estate and its creditors without any favoritism or animus.

When this Court ordered the appointment of a chapter 11 trustee, it was done with the expectation that the appointment would create transparency, dissipate tension between parties, and provide the Court and creditors with full disclosure of the assets within the estate. The Trustee's refusal to investigate the information included in the Crimson Letter calls into question whether these ends were achieved by his appointment. The Court finds such a failure to investigate unacceptable.

Thus, this Court finds that where an allegation is made to a trustee that there are undisclosed or improperly valued assets of the estate, the trustee has an affirmative duty to explore those allegations, even though, in the opinion of the trustee, the source of the information may be suspect.

Lastly, the BA asserts that the Trustee does not have a duty to investigate or file a status report of such investigation beyond what he has already done. This Court disagrees.

The BA is a supervisory arm of the judicial branch and is generally charged with the efficient administration of bankruptcy estates in all chapters, safeguarding estate property, reporting abuses of the bankruptcy system, and supervising trustees. The BA was in support of the appointment of a trustee for all the grounds previously set forth in this Court's Memorandum Opinion appointing a chapter 11 trustee, (Doc. 378). At that time, he supported transparency, communication, full disclosure, regular and accurate reporting and the general integrity of the bankruptcy process that appointment of a trustee would bring. The BA now advances a confounding argument that clearly contradicts his prior position and appears to favor a lack of transparency.

Section 1106(a)(1)-(4), read in conjunction with § 521(a)(4), logically requires a chapter 11 trustee to investigate matters of the estate, and, where necessary, to amend or correct the parts

of the record which are lacking.  If the investigation turns up no new information, then amending the record would be unnecessary.  Regardless of such an amendment, the results of such an investigation should be timely provided to creditors and to the Court.  An investigation without subsequent reporting is pointless.  *See In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009).

The BA also contends that this Court previously determined that the unsecured creditors' interests were being properly represented by the Trustee, (Doc. 1045 at 2); however, the BA's characterization of this Court's ruling is incorrect.  What this Court expressly stated in its Memorandum Opinion regarding the appointment of an unsecured creditors committee was that "*no evidence was presented* that the rights and interests of the unsecured creditors were being inadequately represented by the Trustee.  Unless and until [the unsecured creditors] present the Court with sufficient evidence that Mr. Maples has not or is not upholding his statutory fiduciary duty to the unsecured creditors, no committee shall be appointed."  (Doc. 932 at 9) (emphasis added).  The relief granted by the Court in that Memorandum Opinion was without prejudice, thereby providing unsecured creditors the opportunity to re-petition the Court for appointment of a committee if they believe the Trustee is not upholding his statutory fiduciary duty to them.  (*Id.* at 9-10).

Applying the relevant law set out herein to the facts at hand, it is clear that the Trustee must investigate even the shakiest of information provided to him regarding preservation of the Estate; he must amend the schedules, list and statement of affairs as necessary; and he must affirmatively detail his investigative efforts in a narrative status report as sufficient information becomes available.  *See* H.R. REP. 109-31(I), 2, 2005 U.S.C.C.A.N. 88, 89 *supra* p. 10.

## CONCLUSION

For the reasons stated herein, the Court finds that the Creditors' Motion to Compel is due to be granted *in part*. As to the request for the Trustee to investigate and amend the schedules as necessary, the Motion is GRANTED. The Trustee is hereby directed to investigate the claims and/or assets set forth in the Crimson Letter and to submit a narrative Status Report within thirty (30) days of the date the next Rule 2015.3 Report is due. Going forward, the Trustee shall comply with his § 1106 statutory duties set out therein, and shall further comply with the requirements set out in this Memorandum Opinion. Further, a narrative Status Report shall be due from the Trustee thirty (30) days from the date that each subsequent Rule 2015.3 Report is due.

Regarding the request to proceed derivatively, the Court finds that a ruling at this time is premature, and therefore withholds a ruling thereon. A hearing on the request to proceed derivatively, to the extent one is necessary, will be scheduled for a later date by separate order after the Court and the creditor body has reviewed the above ordered narrative status report.

Dated: July 5, 2018

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE