IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:

CHARLES K. BRELAND, JR.,

CASE NO.: 16-2272-JCO
CHAPTER 11

DEBTOR.

## MEMORANDUM OPINION AND ORDER
## DENYING TRUSTEE'S MOTION TO SELL

This matter came before the Court May 20, 2021 on the Trustee's Motion to Sell Property Free and Clear of Liens Under §363(f) (the "Motion")(doc. 2061) and the Objections thereto by the United States (doc. 2086), the Miller Entities[1] (doc. 2087), Hudgens and Associates (doc. 2088), Levada EF Five LLC (doc. 2090) and Adams and Reese LLP (doc. 2094). This is a contested matter pursuant to Fed. R. Bankr. P. 9014 and 6004. Notice was given and an expedited hearing was held pursuant to the Trustee's request. (Docs. 2062, 2065). Appearances were noted on the record. Upon consideration of the Motion, Objections, Record, evidence presented and arguments of counsel, the Court concludes that the Motion is due to be DENIED for the following reasons:

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the Order of Reference of the District Court dated August 25, 2015.

---

[1] MCA Capital, LLC, Miller Hardin & Holliday, LLC and Construction Services, LLC

1

# FINDINGS OF FACT

Earlier this year, without the knowledge or authority of Richard Maples[2], the Chapter 11 Trustee ("Maples"), the Debtor, Charles K. Breland Jr. ("Breland") engaged in negotiations on behalf of S. Hickory Inc. ("S. Hickory"), an entity wholly owned by Breland but now part of the bankruptcy estate and controlled by the Trustee, to sell certain property of the Estate in Baldwin County, Alabama. The discussions involved selling approximately 13.49 acres of undeveloped land (the "Property"), which was slated to be developed as Phase 1 of South Branch Subdivision, to Smart Living, LLC ("Smart Living"), an entity majority owned by Breland's brother, Louis Breland. Thereafter, unbeknownst to the Trustee, on or about April 9, 2021, Breland, purporting to have the authority to contractually bind S. Hickory, executed a purchase agreement ("Agreement")(Movant's Ex. 1) with Smart Living, to sell the Property for $600,000.00 together with the development rights therein and a first right of refusal on approximately 66.23 acres of adjacent property (the "Retained Tract"). Breland informed the Trustee of the Agreement approximately a week before the Motion was filed on April 23, 2021. Staunch opposition to the proposed sale has been raised in a unified front by the largest, participating Creditors. At the hearing, the Trustee announced his intent to amend the Agreement to remove the first right of refusal on the Retained Tract; however, that did not resolve the pending objections.

The evidence presented in support of the Motion included the testimony of Todd McCrory ("McCrory") and the Trustee. McCrory testified that he was the designated representative of the Buyer, Smart Living LLC and a "back end" president and member of Breland Homes Coastal, LLC ("BHC"). McCrory has been in "the business" for 20 years and assists with procuring

---

[2] A Chapter 11 Trustee was appointed in this case May 3, 2017 (doc.391) subsequent to the removal of Charles K. Breland as a debtor in possession due to the Court's findings of fraud, dishonesty, gross mismanagement, misconduct, self-dealing, pre-petition voidable preferences and fraudulent transfers.

property, determining feasibility, developing, and selling real estate. To McCrory's knowledge, sale discussions began sometime in February between Breland and Reid Hill, an employee of BHC, who had previously purchased lots from Breland. McCrory testified that he visited Breland's home in March to discuss the proposed sale. He explained that Smart Living was interested in purchasing the Property because it already had permitting, the "market is hot", inventory is extremely low and "home sales are through the roof". McCrory testified that although he understood existing permitting to develop the Property would expire May 25, 2021, if the sale was approved, they could move fast to get things done to keep it in place. His testimony as to the permitting expiration was based upon an unauthenticated letter attached to the Motion purportedly prepared by Wooten Engineering ("Wooten Letter")(Movant's Ex.3) and presented by Breland to the Trustee. McCrory could not offer definitive testimony regarding the City of Daphne subdivision regulations or the requirements to obtain further permitting for the Property should it expire as he had no personal knowledge thereof.

As to the proposed development, McCrory testified that if the sale was approved, Phase 1 improvements would stub out just to the south of the Retained Tract and a subsequent purchaser would have to build across the wetlands shown on the plat (Movant's Ex. 2). He also indicated that there is access to the Retained Tract from an adjacent neighborhood; however, no plats or other evidence was offered about the access issue. The Court found McCrory's testimony to be credible and forthcoming. However, he was not offered or qualified as an expert and as such his testimony regarding the feasibility, desirability or marketability of the adjacent Retained Tract upon any sale of the Property was given due weight by this Court. Additionally, as a purported representative of the proposed Buyer[3], McCrory's testimony was not impartial. Further, he

---

3 Although McCrory testified that he was the designated representative of Smart Living, he was unable to produce a corporate authorization,

confirmed that Lois Breland, the brother of the Debtor, is the majority owner of Smart Living.

Trustee Maples also testified in support of his Motion. He indicated that he did not pre-authorize or have any involvement in the negotiations or execution of the Agreement by Breland. His first knowledge thereof was approximately a week before filing the Motion and request for expedited hearing thereof based upon Breland's advisement that the permitting would expire on May 25, 2021. Maples testified that he believes the sale price is adequate because it exceeds the appraisal valuations obtained approximately two years ago, which are of record in this proceeding. He explained time constraints prevented him from obtaining current or specific appraisals and that his prior request for authority to obtain updated appraisals "fell off his radar". Maples did not offer current testimony of a disinterested appraiser, broker or real estate professional. Nor did he present any recent comparables, or other documentary evidence, as to the fairness of the sale terms or the applicability of the aged appraisals in the current market.

Maples also testified that he did not verify the authenticity of the "Wooten Letter" or make an inquiry of the City of Daphne regarding the permitting expiration or any potential for extension thereof prior to the hearing. He was unable to present any estimates or other reliable evidence regarding the costs to re-permit if necessary and admitted he did not know how or by whom the prior permit renewals were accomplished. He also lacked general knowledge of the applicable subdivision development regulations and requirements. On cross, Maples was unable to satisfactorily answer questions posed by Creditors related to the Retained Tract including the effect the sale may have on access and valuation thereof. When questioned by the Court, Maples indicated he "did not have a clue" how much it would cost to cross the wetlands to access the Retained Tract once the Property is sold. Although Maples took the position that the sale of the

---

resolution or other documentation to substantiate such authority.

4

Property would increase the value of the Retained Tract, no market analysis or expert testimony was offered to substantiate such position. The Trustee further admitted that he had not visited or marketed the Property in the past two years and had not been able to perform all the due diligence he would have liked due to the quickly approaching development permit expiration.

Additionally, the Trustee acknowledged the pending Application to Allow Compromise which he executed and filed on behalf of the Estate (Doc. 1483), provides the Miller Entities an option to purchase the same Property. Although the Trustee contends that the lien of the Miller Entities would attach to the sale proceeds, he was unable to quantify how any lien (or damages) would be calculated or establish if the proceeds would even be sufficient to cover the potential eventualities of litigation arising from failure to abide by the Compromise.

## CONCLUSIONS OF LAW

*Sound Business Judgment Standard*

The business judgment test is the standard adopted by a majority of courts when evaluating a proposed motion to sell. *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002)(citing *In re Lionel,* 722 F.2d 1063 (2nd Cir.1983); see also *In re Knott,* 2015 WL 251705 (Bankr. M.D. Fla. 2015); *In re Tom Foods, 2005 WL 3022022* (Bankr. M.D. Ga. 2005)*; U.S. ex rel. Rahman v. Oncology Associates, P.C.,* 269 B.R. 139 (D.Md.2001). It is generally recognized that the Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, *so long as* the burden of giving sound business reasons is met. *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) (citing *In re Bakalis,* 220B.R. 525, 531–32 (Bankr.E.D.N.Y.1998). The proponent of the Motion bears the burden of establishing

sound business reasons for the terms of the proposed sale. *In re Gulf States Steel* at 514; see also *In re Diplomat Const. Inc.*, 481 B.R. 215 (N.D. Ga. 2012). Further, when a proposed sale of debtor's assets would benefit an insider of the debtor, the bankruptcy court is required to give heightened scrutiny to the fairness of the value provided by the sale and to the good faith of the parties in executing the transaction. *11 U.S.C.A. § 363*; *In re Fam. Christian, LLC, 533 B.R. 600 (Bankr. W.D. Mich. 2015).*

*Factors Courts Consider When Evaluating The Trustee's Business Judgment*

Factors that bankruptcy courts may consider in determining whether the Trustee has shown sound business reasons to approve a proposed sale of assets of a Chapter 11 estate over Creditors' objections include: (1) any improper or bad faith motive; (2) the fairness of the price and the existence of arm's length negotiations; (3) adequate procedure, including proper exposure to the market and accurate and reasonable notice to all parties in interest; (4) whether there is evidence of a need for speed, e.g., based on perishable nature of assets or looming, adverse market conditions; (5) whether there is a business justification for the sale and the sale process, as well as for having the sale process proceed apart from the confirmation process; (6) whether the case is sufficiently mature that the parties in interest have received adequate notice, have obtained appropriate information, and have been able to participate; (7) whether the proposed sales process is sufficiently straightforward to facilitate competitive bids; (8) whether the assets have been aggressively marketed in an active market; (9) whether the fiduciaries that control the debtor are truly disinterested, so that court can have faith in their business judgment; (10) whether the proposed sale includes all of the debtor's assets or the "crown jewel" of such assets; (11) whether the purchaser will receive any extraordinary protections; (12) the burdens of proposing the sale as part of the plan confirmation process; (13) who will benefit from the sale; (14) whether any special

adequate protection measures are necessary or possible; and (15) whether the hearing on the proposed sale was a true adversary presentation. 11 U.S.C.A. § 363; *In re Gulf Coast Oil Corp., 404 B.R. 407 (Bankr. S.D. Tex. 2009).*

## ANALYSIS

*Application of the Pertinent Factors*
*Indicates A Lack of Sound Business Judgment By The Trustee*

Upon consideration of the applicable factors, the Court concludes that the Trustee has not met his burden to establish sound business reasons for his decision to seek approval to sell the Property. Many of the above enumerated factors cast doubt upon the soundness of the Trustee's business judgment in seeking to proceed with the sale, including: factor two ( the fairness of the price and the existence of arm's length negotiations); factor three (adequate procedure, including market exposure); factor seven (whether the proposed sale sufficiently facilitates straightforward competitive bids); factor eight (whether the assets have been aggressively marketed in an active market); factor nine (whether the fiduciaries that control the debtor are truly disinterested) and factor twelve (who will benefit from the sale).

Although the Trustee testified that he thought the sale was in the Estate's best interest and "the price was good", the evidence (or absence thereof) revealed his lack of adequate information to make a fully informed assessment. It was apparent from the gaps in the Trustee's knowledge that the rush nature of the matter, wherein the Trustee hurriedly posed the Motion at the Debtor's urging, did not afford the Trustee the opportunity to fully flesh out the necessary details including: the current Property value, the value of the development rights, the applicable permit requirements or the proposed sale's impact upon the Retained Tract. By all accounts, the permit deadline had been pending for at least two years, however, the Trustee admitted he was generally unaware of it

7

Case 16-02272    Doc 2130    Filed 06/03/21    Entered 06/03/21 16:11:12    Desc Main
Document    Page 7 of 11

until the Debtor's revelation after the Agreement was executed. This type of purported, emergency situation, does not lend itself to sound business judgment but rather undue pressure and persuasion by the Debtor who unilaterally negotiated the Agreement in the first place without the Trustee's knowledge or involvement.

Additionally, the Trustee's reliance on nothing more than two year-old appraisals, not even tailored to the specific property in a booming real estate market which by his own witness' testimony is "through the roof" without any effort whatsoever to list, market or engage the services of a disinterested real estate professional would call into question the Trustee's business judgment in any context. This is even more so in the present scenario wherein the deal was negotiated with an entity controlled by the Debtor's brother and not disclosed to the Trustee until the last minute. Although the Court recognizes the deference generally afforded to the Trustee's business judgment, that latitude is not without limitation as such judgment must be predicated upon sound business reasons. This Court simply does not find the Trustee's extensive reliance upon the representations of the prospective Buyer and the Debtor in a sale that benefits the Debtor's brother prudent or sufficient to evidence sound business judgment.

*Other Considerations Weighing Against Approval*

Additional considerations support finding the lack of sound business reasons for the proposed sale. Despite the Trustee's contention that the proposed sale would be beneficial because it would immediately yield funds to the estate and additional time and expense would be required, if the Property were not sold, the Court finds that neither assertion is well-reasoned. As noted above, there was no expert or other independent evidence of the present value of the Property. Additionally, the estate reports do not reveal any pressing need for immediate cash at the expense of good judgment. Further, a litany of claimants, which have kept well-apprised of the estate

administration and stand to be paid from the liquidation of the Debtor's assets, levied unified and unequivocal opposition to the Motion.

Moreover, the Trustee previously filed an Application to Approve Compromise ("Compromise") (Doc. 1483) which provides the Miller Entities with an option to purchase the same Property proposed to be sold. The Trustee failed to satisfactorily explain how reneging on his prior agreement with the Miller Entities, who were also objecting to the sale, would not spawn further litigation. Since the Trustee was not able to quantify the difference between any purported loss of value upon the permit expiration and the litigation expenses and damages that will likely ensue upon breach of the proposed Compromise, it would have been impossible for the Trustee to perform a cost/benefit analysis. Hence, the matter again boils down to the Trustee's lack of due diligence as to the ramifications of the proposed sale. Simply trading one issue for one or more other issues or disputes does not evidence sound business judgment.

*The Insider Nature of the Proposed Transaction Warrants Heightened Scrutiny*

The Bankruptcy Code provides that in individual cases, an "insider" includes a " . . . relative of the debtor . . ." 11 U.S.C. § 101 (31)(A)(i). Sales to insiders are subject to heightened scrutiny because insiders "usually have greater opportunities for ... inequitable conduct." *In re Roussos*, 2016 WL 5349717 (Bankr. C.D. Ca.)(*citing Fabricators, Inc. v. Technical Fabricators, Inc.* (*Matter of Fabricators, Inc.*, 926 F.2d 1458, 1465 (5th Cir. 1991)); *see also In re Tidal Const. Co., Inc.*, 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009)("[E]ven when parties are completely forthright with the facts surrounding the transfer, §363 sales to insiders are subject to a higher scrutiny because of the opportunity for abuse."); *Rickel & Associates v. Smith* (*In re Rickel & Associates, Inc.*), 272 B.R. 74, 100 (Bankr. S.D.N.Y. 2002) (same); *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 837 (Bankr. E.D. Va. 1997).

As noted above, the proposed sale transaction involves a transfer from an entity solely owned by the Debtor to an entity majority owned by the Debtor's brother. Hence, the proposed sale would benefit an insider of the Debtor. Therefore, the heightened standard required in the evaluation of insider transactions bolsters the Court's determination that that Motion is due to be denied.

## **CONCLUSION**

In sum, the evidence revealed that, due in part to the needlessly rushed timing of the sale, the Trustee simply could not meet his burden of establishing the exercise of sound busines judgment. Specifically, he did not have the requisite knowledge of the negotiations, the Property or the permitting to make an informed analysis. Nor did he have sufficient time to perform the necessary due diligence to: (1) contemplate the effect the sale would have on the Compromise; (2) obtain current appraisals or market analysis for the Property or (3) evaluate the impact on the Retained Tract. Further, the Trustee was unable to satisfy the concerns of the objecting Creditors who will be saddled with the loss of the property from the estate and the fallout from the Trustee's breach of the Compromise. Moreover, the heightened standard required of insider transactions, tips the scale even farther toward disapproval. Therefore, it is not just a finding of unsound business judgment that requires denial of the Motion, it is the absence of evidence necessary for the Court to conclude that the Trustee even obtained the requisite information to effectively assess the matter at all.[4]

Based upon the forgoing, the Court hereby finds that the Creditors' Objections to the

---

[4] The Court does not cast blame solely on the Trustee for the lack of due diligence in this instance as the evidence established that it was the Debtor's actions of failing to communicate with the Trustee, entering into unauthorized, surreptitious negotiations to sell the Property and withholding such information until the permitting deadline would soon expire that necessitated a rush filing.

Motion are due to be and are hereby SUSTAINED and Trustee's Motion to Sell Property Free and Clear of Liens Under §363(f) (the "Motion" )(doc. 2061) is due to be and is hereby DENIED.

Dated: June 3, 2021

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE