IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| *In re:* | * | |
| | * | Case No.: 16-2272-JCO |
| CHARLES K. BRELAND JR., | * | |
| | * | Chapter 11 |
| | * | |
| Debtor. | * | |
| | * | |

## MEMORANDUM ORDER AND OPINION

This matter came before the Court on the Motions of Attorney Irvin Grodsky (doc. 2362), David Hudgens (docs. 2373, 2430), and Attorney Julie Hudgens-Haney (doc. 2403), as counsel for the Hudgens Creditors, for allowance of administrative claims for attorney's fees and costs (collectively, "§523 Motions") and the Debtor's Objections thereto (doc. 2426, 2427, 2444). Proper notice of hearings on the above matters was given and appearances were noted on the record. At the conclusion of counsels' arguments, the Court requested more documentation for *in camera* review and indicated it would take the matters under advisement upon receipt. The Court having received all materials, determines that based on the nature of the matters, the legal issues involved, and the relationship of the movants, it is appropriate to address the aforementioned Motions jointly in one order. Further, based on the pleadings, briefs, exhibits, record, and statements of counsel, the Court finds that the §523 Motions are due to be DENIED for the following reasons:

1

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157, and the District Court's Standing Order of Reference dated August 25, 2015. This is a core proceeding under 28 U.S.C. §157(b)(2)(B).

## PROCEDURAL HISTORY AND FACTS

The Debtor, Charles K. Breland, Jr. ("Breland") filed this Chapter 11 bankruptcy on July 8, 2016. Breland's initial schedules reflected total assets of $51,727,881 and debts of $5,445,170. (Doc. 42). On July 25, 2016, Creditor, Levada EF Five, LLC ("Levada") filed a Motion to Dismiss or in the Alternative Appoint a Chapter 11 Trustee, which was amended and supplemented ("Levada's Motion") (Docs. 22, 65, 173, 184). Levada's Motion set forth that Breland's fraudulent transfers, gross mismanagement, and other non-statutory grounds warranted dismissal or the appointment of a Trustee. Levada's Motion stated in part,

> Breland has created a network of entities which he has attempted to use to shield his assets from collection. He has emptied his bank accounts and transferred real property of significant and substantial value out of his name. Those transfers were to insiders including his wife and his affiliate entities and occurred immediately upon the announcement of Levada's verdict. He has caused a mortgage to be placed on at least some of that property and used for the benefit of Breland and his affiliates. His testimony indicates he did not tell the bank about Levada's verdict when he personally guaranteed the loan. He is also storing money in a debtor-in-possession account to shield it from his creditors and is using it for himself and his businesses. Breland's dishonest and fraudulent conduct is grounds for appointing a trustee . . .

(Doc. 22 at 14.)

Levada's Motion also alleged that Breland's misuse of the Chapter 11 process as an instrument to delay payment of its debts and serve the interests of its insiders, the deep-seated

2

Case 16-02272    Doc 2480    Filed 11/18/22    Entered 11/18/22 14:08:57    Desc Main
Document      Page 2 of 13

conflict and animosity between Breland and his creditors, and the failure to file 2015.3 reports further justified appointment of a Chapter 11 Trustee. (Docs. 22, 62, 65, 184).

The Hudgens Creditors thereafter filed a Motion for Authority to Bring Fraudulent Transfer Action on September 16, 2016 and a Motion to Appoint a Chapter 11 Trustee on September 22, 2016 ("Hudgens' Motions"). (Docs. 98, 109). The Hudgens' Motions set forth similar facts and arguments as the Levada Motion[1], including Breland's various transfers of property, inability to provide consistent financial and accounting information, fraud, dishonesty, gross mismanagement, and other statutory grounds warranting the appointment of a Trustee. (*Id.*) The Bankruptcy Administrator and the United States also urged the court for the appointment of a Chapter 11 Trustee. (Docs 293, 375). Breland filed an Omnibus Brief in Opposition (doc. 122) and a Motion to Dismiss (doc. 312) which the Bankruptcy Administrator, the Hudgens Creditors, the United States, and Levada all opposed. (Docs. 332, 371, 375, 376). After a full hearing including three days of testimony, this Court entered an order requiring the appointment of a Chapter 11 Trustee ("Trustee Order"). (doc. 378). The Trustee Order stated in part:

> . . . Mr. Breland's systematic siphoning of assets to other companies in common control on the eve of multiple unfavorable jury verdicts, and on the eve of bankruptcy raises grave concerns about his ability to act in the interest of his creditors .
>
> . . .
>
> Mr. Breland's failures to disclose and his inaccurate and inconsistent disclosures are so extensive that they can only be the result of fraud, dishonesty, or gross mismanagement.
>
> . . .
>
> The inaccuracies, omissions, and obfuscations alone justify the appointment of a trustee.

---

[1] The Hudgens' Motion even states in part, "The undersigned has used substantial portions of the motion filed by Levada in the below discussion of the law." (Doc. 109 at 11.)

> . . . Mr. Breland's failure to obey orders of this Court is cause by itself to appoint a trustee.
>
> . . .
>
> Mr. Breland's bold transfer of so many properties out of the reach of potential judgment creditors on the eve of multiple trials is likewise material in this Court's consideration of his misconduct. The evidence is clear and convincing that nearly every action Mr. Breland has taken since those trials started has been to frustrate his creditors.
>
> . . .
>
> The numerous transfers between Mr. Breland and the affiliated entities and among the affiliated entities are the result of a lack of evenhandedness and self-dealing.
>
> . . .

Doc. 378 at 29-31.

After years of contentious administration, including: various negotiations, IRS litigation, related adversary proceedings, and failed compromises, court ordered mediation ultimately facilitated resolution of various outstanding matters as well as the proposal of a consensual plan which was recently confirmed. (Doc. 2325). Notwithstanding confirmation, an adversary proceeding involving the Hudgens Creditors remains pending.

After plan confirmation, the Hudgens Creditors' Counsel filed Motions for Allowance of Administrative Claims asserting that their efforts were compensable under Section 503(b)(4). The Hudgens Creditors contend that they made a substantial contribution to the success of the Chapter 11 under §503(b)(3)(D) by obtaining the Trustee Order and challenging certain proposed actions of the Debtor in Possession before the appointment of a Trustee. Attorney Irvin Grodsky seeks an administrative claim of $84,710.00 for 240.6 hours at $350 per hour (doc. 2362), David Hudgens

seeks $29,850.00[2] for 99.50 hours at $300 per hour (doc. 2430), and Attorney Julie Hudgens Haney seeks $38,132.50 for 212.50 hours of work at a rate of $175-$190 per hour (doc. 2403).

Because of the surplus nature of the case, Breland has a vested interest in the administration of the Chapter 11 and the allowance of claims. Breland contends that the Hudgens Creditors' Administrative Expense requests are due to be denied because: (1) the Hudgens Creditors did not provide a substantial contribution to the success of the Chapter 11; (2) the compensation requested is for services unrelated to appointment of a Trustee; (3) creditors would have received the same distribution even without the appointment of a Trustee; (4) the Hudgens Creditors took actions adverse to the estate; and (5) there was duplication of efforts. (Doc. 2426).

## ANALYSIS

*<u>A party seeking an administrative expense claim under § 503(b)(3)(D) bears the burden of proving that its efforts directly resulted in a significant and tangible benefit to the case.</u>*

Section 503 of the Bankruptcy Code provides for the allowance of administrative expenses in limited circumstances. 11 U.S.C. §503. It provides in part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . .
>
>> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable

---

[2] After Breland objected to David Hudgens' initial application (doc.2373) seeking $53,280.00, Hudgens filed his amended application removing time entries for the period of time that he was not authorized to practice law.

5

services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. §503(b)(3)(D), (b)(4).

The plain language of Section 503(b)(3)(D) requires that to be compensable, the alleged contribution must be substantial. As a general premise, courts narrowly construe administrative expense provisions and grant substantial contribution applications only in unusual or rare cases. *In re Am. Plumbing & Mech., Inc.,* 327 B.R. 273 (Bankr. W.D. Tex. 2005); *In re Randall's Island Family Golf Centers, Inc.*, 300 B.R. 590 (Bankr.S.D.N.Y. 2003); *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246 (Bankr.D.Colo.1990). Such narrow construction is also consistent with the general doctrine that priority statutes, such as §503(b), should be strictly construed. *In re Miller,* 610 B.R. 678 (Bankr. S.D. Ala. 2019); *In re United Container LLC*, 305 B.R. 120 (Bankr. M.D. Fla. 2003); *In re Federated Dep't Stores, Inc.,* 270 F.3d 994 (6th Cir.2001); *In re Commercial Fin. Servs., Inc.,* 246 F.3d 1291 (10th Cir.2001); *In re S & Y Enterprises, LLC*, 480 B.R. 452 (Bankr. E.D.N.Y. 2012).

The determination of whether a creditor has made a "substantial contribution" is a factual inquiry to be made case-by-case. *See In re United Container, LLC* at 126; *In re Am. Plumbing & Mech., Inc.* at 279. The applicant bears the burden to prove by a preponderance of the evidence that it rendered a substantial contribution. *Hall Fin. Grp., Inc. v. DP Partners, Ltd. (In re DP Partners, Ltd.),* 106 F.3d 667, 671 (5th Cir.1997) cert. denied, 522 U.S. 815, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997); *Haskins v. United States (In re Lister),* 846 F.2d 55, 57 *(*10th Cir.1988*); In re Gurley,* 235 B.R. 626, 631 *(*Bankr.W.D.Tenn.1999*);In re Canton Jubilee, Inc.,* 253 B.R. 770, 775 (Bankr.E.D.Tex.2000); *In re Granite Partners, L.P.,* 213 B.R. 440, 447 (Bankr.S.D.N.Y.1997).

*Considerations In Determining Whether A Contribution is Substantial*

When interpreting a statute, courts begin by examining the text and assigning the "plain, ordinary, and most natural meaning" to terms not otherwise defined in the text itself. *In re Celotex Corp.*, 227 F.3d 1336, 1338 (11th Cir. 2000) (citing *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir.1995). Since the Bankruptcy Code does not define "substantial contribution" and the legislative history is of little help,[3] courts have interpreted the statutory language in similar but slightly different ways. *See In re New Power Co.*, 311 B.R. 118 (Bankr.N.D.Ga.2004); *In re DP Partners, Ltd.*, 106 F.3d 667; *In re Alert Holdings Inc.*, 157 B.R. 753 (Bankr.S.D.N.Y.1993); *In re Alumni Hotel Corp.*, 203 B.R. 624 (Bankr.E.D.Mich.1996). Courts in the Eleventh Circuit have employed a three-prong approach which requires the movant to prove that its actions: (1) directly and demonstrably benefit the estate; (2) foster and enhance, rather than retard or interrupt the progress of reorganization; and (3) are of considerable amount, value, or worth. *In re First Baldwin Bancshares, Inc.,* No. 13-00563-11-MAM, 2013 WL 2383660, at 3 (Bankr. S.D. Ala. May 30, 2013); *see also*, *In re Celotex,* 227 F.3d 1336, 1338 (11th Cir.2000); *In re Kidron*, 278 B.R. 626 (Bankr. M.D. Fla. 2002).

1. *The Applicant's Efforts Must Directly and Demonstrably Benefit the Estate.*

When evaluating whether a claimant's efforts directly benefit the estate, some courts have applied a "but for" test to determine whether a causal relationship exists between the claimant's efforts and the requisite benefit. Compensation must be limited to rare instances in which "but for" the applicant's efforts, the movement toward final reorganization would have been substantially diminished. *See In re New Power Co.,* 311 B.R.118,124 (Bankr.N.D.Ga.2004)(denying

---

[3] The Fifth Circuit has noted that the legislative history is scant. *In re DP Partners Ltd.*, at 673.

7

compensation related to efforts to appoint an examiner when an examiner would have been appointed absent movant's efforts); *In re Alert Holdings Inc.,* at 759 (denying the substantial contribution application when even without the benefit of the claimant's efforts, most of the changes would have been made); *In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684, 690 (Bankr.S.D.Cal.1988)(noting compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate).

Similarly, courts have routinely held that fees and expenses arising from duplicative efforts are not suitable for substantial contribution reimbursement. *See In re Am. Plumbing & Mech., Inc.,* at 292 (burden is on the movant to show, by a preponderance of the evidence, that services are not duplicative); *In re DP Partners, Ltd.* at 673 (Section 503(b) requires the "judge to scrutinize claimed expenses for waste and duplication ....");*In re Granite Partners* at 454 (movant was not entitled to substantial contribution reimbursement when it duplicated the trustee's investigation); *In re General Homes Corp. FGMC, Inc.,* 143 B.R. 99, 103 (Bankr. S.D. Tex. 1992) (court should consider whether the services were duplicative of services rendered by a committee, the debtor, or the attorneys for a committee or the debtor).

The Hudgens Creditors have not convinced this court that their efforts directly and demonstrably benefitted the estate. Considering Breland's conduct and the lengthy, arduous, and often contentious nature of this proceeding, this court recognizes that the appointment of the Chapter 11 Trustee likely facilitated the administration of the case.[4] However, the Hudgens Creditors have not shown by a preponderance of the evidence that "but for" their efforts, a Chapter 11 Trustee would not have been appointed. The Hudgens Creditors were not the first or the only

---

[4] Although the court notes that the appointment of a Trustee facilitated the administration, since the Debtor's assets exceed his liabilities and the case was pending for five years before confirmation, it may be arguable that some creditors might have benefitted more from dismissal than the appointment of a Trustee.

parties to seek appointment of a Chapter 11 Trustee or to bring Breland's unscrupulous activities to light. The record reflects that Levada's Motion to Dismiss or in the Alternative Appoint a Chapter 11 Trustee was filed shortly after the Petition. (Doc. 22). The Hudgens' Motions were not filed until approximately eight weeks later. (Doc. 109). The Hudgens' Motions duplicated and even directly cited excerpts from Levada's Motion. *Id.* at 11. Additionally, the Bankruptcy Administrator and the United States also urged this court for the appointment of a Chapter 11 Trustee. Thus, the Hudgens Creditors were not the sole impetus to the entry of the Trustee Order. The activities of the various parties requesting the appointment of a Trustee were duplicative. Further, in light of the Debtor's flagrantly egregious conduct, there was a plethora of grounds to support appointment of a Chapter 11 Trustee even absent the Hudgens Creditors' efforts.

Throughout the administration of the case, numerous parties contributed in varying degrees and this court does not believe that any one party is due credit for substantial contribution to the case. It is also noteworthy that the Hudgens Creditors' claims were not even fully resolved in the confirmed plan and an adversary proceeding remains pending in that regard. Thus, considering the totality of the facts and the over-arching principle requiring courts to narrowly construe administrative expense provisions, this court concludes that the Hudgens Creditors have not met their burden of proving that their efforts directly and demonstrably benefitted the estate within the meaning of §503(b)(3)(D).

> 2. *The Applicant's Activities Must Foster And Enhance Rather Than Retard Or Interrupt the Reorganization Process.*

Compensation pursuant to §503(b)(3)(D) is not appropriate when the claimant's participation in the case "as a whole was detrimental to the estate," or "caused an adverse impact on the estate. *In re New Power Co*. at 124 (citing *Matter of D'Lites of America, Inc.,* 108 B.R. 352


9

Case 16-02272   Doc 2480   Filed 11/18/22   Entered 11/18/22 14:08:57   Desc Main
Document      Page 9 of 13

(Bankr.N.D.Ga.1989). Notwithstanding a finding of extensive involvement in a case, courts are unlikely to find a substantial contribution when the movant's participation has retarded or interrupted the debtor's reorganization. *Id.* (citing *In re DP Partners, Ltd.* at 672; *In re Communications Management & Information, Inc.*, 172 B.R. 136, 141 (Bankr.N.D.Ga.1994). For example, courts have declined to find substantial contribution when the applicant has taken positions contrary to law, and when the estate's costs attributable to the movant's activities outweigh any benefit. *See In re Granite Partners*, at 450 (denying substantial contribution award noting the movants unsuccessfully defended a position their clients were not entitled to take under applicable law); *In re Big Rivers Elec. Corp.*, 233 B.R. 739 (W.D.Ky.1998)(denying application for payment of expenses after finding that, although some of the applicant's activities may have benefitted the estate, any benefit was outweighed by the costs associated with the applicant's attempts to interrupt and delay the bankruptcy proceedings).

As for this element of the substantial contribution analysis, Breland contends that the Hudgens Creditors are not due reimbursement because they took actions detrimental to the estate. (Doc. 2426 at 4). The Debtor asserts that the Hudgens Creditor's support for two failed motions to compromises interrupted the reorganization process. *Id.* Breland further maintains that if the compromises had been approved, they would have prevented the proposal of the plan which was ultimately confirmed. *Id.* The court recalls the proceedings and notes that the failed compromises diverted attention from plan negotiations, caused unnecessary delay, and increased expenses. Additionally, despite the court ordered mediation and plan negotiations, the dispute between the Debtor and the Hudgens Creditors has not been resolved. Instead, the related adversary proceeding was carved out of the consensual plan and still remains to be adjudicated. (Doc. 2287 at 13-16). However, the above finding, that the Hudgens Creditor's activities did not directly and

10

demonstrably benefit the estate, obviates the need to delve further into the issue of whether and to what extent, the Hudgens Creditor's actions related to the compromises impeded or interrupted the reorganization process.

> 3. *The Applicant's Contribution Must Be of Considerable Amount, Value, or Worth.*

In addition to the other requirements, to establish substantial contribution under Section 503(b)(3)(D), the applicant must also prove that its contribution is of "considerable amount, value, or worth." *DP Partners, Ltd.* at 673 n.24(*citing Webster's Third New International Dictionary* 2280 (4th Ed.1976)); *see also In re Alert holdings, Inc.*, at 760 ("The phrase 'substantial contribution' is not one taken lightly. Substantial means just that; important, essential, plentiful."). Creditors' actions that only "incidentally" benefit the estate are not "substantial" for purposes of section 503(b)(3)(D). *In re Kidron, Inc.*, at 632–33; *In re Ocean Blue Leasehold Prop., LLC*, 414 B.R. 798, 807 (Bankr. S.D. Fla. 2009). Expected or routine activities in a Chapter 11 case do not constitute substantial contribution. *In re The Columbia Gas Sys., Inc.*, 224 B.R. 540, 548 (Bankr.D.Del.1998). Even if the efforts and activities of the applicant or its attorney are admirable, excellent, or done with professionalism, that alone cannot elevate expected or routine activities to the level of substantial contribution. *See Columbia Gas Sys Inc at 548; Granite Partners* at 450; *In re Baldwin–United Corp.,* 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987). This court acknowledges the excellent work done by Mr. Grodsky in his representation of the Hudgens Creditors, often under difficult circumstances, but as noted above, that alone cannot support a substantial contribution claim.

Many courts have performed a cost-benefit analysis when considering substantial contribution claims. *In re Kidron, Inc.,* 278 B.R. 626 (Bankr.M.D.Fla.2002) (awarding creditor

$19,176.54 in attorneys' fees for bringing another $2 million into the estate); *In re W.G.S.C. Enters., Inc.,* 47 B.R. 53, 57–58 (Bankr.N.D.Ga.1985) (payout to unsecured creditors increased from 50% to 100%); *In re Condere Corp.*, 251 B.R. 693, 695 (Bankr.S.D.Miss.2000) (payout to unsecured creditors increased from 25% to 65%); *In re McLean Indus., Inc.*, 88 B.R. 36, 39 (Bankr.S.D.N.Y.1988) (awarding applicant $6,210 for bringing additional $1.15 million into the estate). Under this results-oriented approach, administrative expenses have not been allowed when the analysis reflects no substantial contribution. *See In re Lease–A–Fleet, Inc.,* 148 B.R. 419, 429 (Bankr.E.D.Pa.1992) (cost of $ 162,000 "clearly exceeded the amounts recovered"). Although some courts have disallowed substantial contribution claims when the creditor's actions are self-serving, in the Eleventh Circuit, the movant's motive does not necessarily preclude allowance. *In re Celotex*, 227 F.3d 1336, 1339 (11th Cir.2000)(explaining the analysis emphasizes the value of, and not the motivation behind, the creditor's contribution to the resolution of the Chapter 11 case).

Even if the appointment of the Chapter 11 Trustee was attributable to the Hudgens Creditors' efforts[5], they still cannot prevail on their claim for reimbursement because they have not proven that such efforts resulted in a concrete benefit of considerable amount, value, or worth. Although the Hudgens Creditors assert that the plan proposing a 100% payout on allowed claims stems from their actions, this court disagrees. This court has previously observed that the administration of the case was expected to result in a surplus and that has held true. (*See* docs. 42, 1806, 2287). Hence, any confirmed plan would have necessarily provided a 100% payout on allowed claims. Additionally, this court's observations throughout the progression of the case and the parties eventual proposal of a confirmable plan support finding that the reorganization was a

---

[5] As noted above, the Hudgens Creditors failed to prove that their activities directly and demonstrably benefitted the estate because such efforts were duplicative and questions remain as to if the Hudgens creditors' actions may have been detrimental. That said, the court's assumption here is for illustrative purposes.

collaborative effort of many, facilitated by a court appointed mediator, rather than the efforts of any one party.

The Hudgens Creditors seem to be asking this court to infer, assume, or theorize that the activities of the Trustee bestowed the requisite benefit to the estate; however, the law requires that the Movants prove a direct, clear, and substantial benefit to the case. This court does not believe that the Movants have met their burden or that a cost-benefit analysis favors their requests. The Movants are collectively seeking over $150,000.00 in fees and expenses. Additionally, the costs associated with the Trustee's compensation, Trustee's counsel's fees, related experts, and expenses have been considerable. As noted above, the 100% payout on allowed claims was due to the Debtor's assets as set forth in the debtor's schedules from the inception of the case.

## CONCLUSION

For the reasons noted above, this court finds that the Hudgens Creditors failed to establish their efforts meet the requisite standard under §503(b)(3)(D) for reimbursement under §503(b)(4). Accordingly, the Motions of Attorney Grodsky (doc. 2362), David Hudgens (doc. 2430), and Attorney Julie Hudgens-Haney (doc. 2403) seeking allowance of administrative claims for their attorney's fees and costs are DENIED.

Dated: November 18, 2022

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE